## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## Case No.: 0:20-cv-01241 (WMW/HB)

| | |
|---|---|
| Patricia Freeman, *on behalf of herself and all others similarly situated*,<br><br>            Plaintiff,<br><br>    vs.<br><br>Ally Financial Inc. *d/b/a* Ally Financial, Resolvion, LLC, and 11th Hour Recovery, Inc.,<br><br>            Defendants. | **AMENDED CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

1.      Plaintiff Patricia Freeman hereby amends her Complaint [ECF. 1] pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

2.      Plaintiff Patricia Freeman brings this consumer class action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code, Minn. Stat. § 336.9-101, *et. seq*. ("UCC"); and Minnesota Common Law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendants transact business in this Judicial District; Defendant Ally is registered to do business in Minnesota; Defendant 11th Hour

1

Recovery, Inc. is located in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## **PARTIES**

4.     Plaintiff is a natural person, and citizen of the State of Minnesota.

5.     Defendant Ally Financial Inc. *d/b/a* Ally Financial ("Ally") is a Michigan corporation with its principal place of business located at 200 Renaissance Center, Detroit, MI 48265.  Ally is registered to do business in Minnesota under the assumed name Ally Financial.  CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of Ally at 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402.

6.     Defendant Resolvion, LLC ("Resolvion") is a Delaware limited liability company.  Resolvion is registered to do business in Georgia with its principal place of business located at 1150 Lake Hearn Drive, Suite 640, Atlanta, GA 30342. Corporation Service Company is the registered agent authorized to accept service at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.  Resolvion previously operated as ALS Resolvion.  Resolvion changed its name in February 2020.

7.     Resolvion's services include vehicle repossession, asset location, and other collateral recovery.

8.     Resolvion offers repossession management services to financial institutions across the nation – *also known as repossession "forwarding."*

9.     Resolvion is "laser-focused" on producing the best vehicle recovery results for its clients.

10.     Resolvion is engaged in a business, the principal purpose of which is the

enforcement of security interests.

11.     Resolvion regularly enforces or attempts to enforce security interests for other parties.

12.     Defendant 11th Hour Recovery, Inc. ("11th Hour") is a Minnesota corporation with its registered office located at 1305 159th Avenue Northeast, Ham Lake, MN 55304.  Alex Peterson and Amanda Peterson are the registered agents authorized to accept service on behalf of 11th Hour. The principal executive office for 11th Hour is located at 14525 Drake Street Northwest, Andover, MN 55304.

13.     11th Hour employs well trained professional recovery agents.

14.     11th Hour and its staff are asset repossession exerts.

15.     11th Hour is engaged in a business, the principal purpose of which is the enforcement of security interests.

16.     11th Hour regularly enforces or attempts to enforce security interests for other parties.

17.     Resolvion and 11th Hour regularly use the mail, roads, and telephone in connection with the enforcement of security interests by operating tow truck vehicles and transporting repossessed vehicles; engaging in telephone conversations with consumers regarding repossession and repossession fees; telephone calls with creditors and auction companies; and mailing correspondence, invoices, statements, notices, and reports to creditors and auction companies.

18.     Federal court records indicate that Resolvion and 11th Hour have been sued on multiple occasions under the FDCPA.

19.     For purposes of 15 U.S.C. § 1692f(6), Resolvion and 11th Hour are "debt collectors" as defined in the FDCPA.  *See* 15 U.S.C. § 1692a(6).

20.     Resolvion and 11th Hour were acting as debt collectors with respect to Plaintiff and the security interests referenced in this Complaint.

## NATURE OF THE ACTION

**MINNESOTA LAW - THE "*COBB*" NOTICE**

21.     When a secured party has repeatedly accepted late and/or partial payments from the debtor over the course of a loan, the secured party must notify the debtor that strict compliance with the contract terms will be required before the secured party can lawfully repossess the collateral.  *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 236–37 (Minn. 1980).

22.     The notice which a secured party is required to send to a consumer is referred to as a "*Cobb* notice."  *See Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

23.     The secured party must notify the debtor that "*strict compliance with the time for payment*" will be required "*in the future.*"  *See Cobb*, 295 N.W.2d at 236 (citing cases) (emphasis added).

24.     The secured party must notify the debtor that late payments will no longer be accepted. *See Cobb*, 295 N.W.2d at 237.

25.     In addition to the notification of "strict compliance," the *Cobb* notice must include: (a) the amount past due; (b) the deadline to pay the due balance; and (c) the

consequences for failure to comply.  *See Akerlund v. TCF Nat'l Bank of Minnesota*, No. 0:99-cv-01537 (MJD/JGL), 2001 WL 1631440, at *5 (D. Minn. 2001) (citations omitted).

26.     The *Cobb* notice must be in writing.  *See Buzzell*, 802 F. Supp. 2d at 1021 n.7 (citing cases) (*Cobb* cases "contemplate notice being given in the form of a letter."); *see also Hendrickson v. Fifth Third Bank*, No. 0:18-cv-00086 (WMW/TNL), 2019 WL 652417, at *2 (D. Minn. Feb. 15, 2019) (citing *Cobb*, 295 N.W.2d at 237) (describing the *Cobb* requirement as "written notice").

27.     Where a secured party has repeatedly accepted late and partial payments from the debtor over the course of a loan and has failed to send the requisite *Cobb* notice, repossession is wrongful as a matter of law.  *See Buzzell*, 802 F. Supp. 2d at 1024.

28.     At all times relevant to this Complaint, Ally did not have any polices or procedures in place of providing Minnesota consumers with the proper and requisite strict compliance notice (i.e., *Cobb* notice) under Minnesota law.

29.     At all times relevant to this Complaint, Ally failed to provide Minnesota consumers with the proper and requisite *Cobb* notice prior to repossessing said consumers' vehicles.

## FACTUAL ALLEGATIONS
**(Experience of the Representative Plaintiff)**

**THE MINNESOTA SECURITY AGREEMENT**

30.     In June 2015, Plaintiff purchased a 2013 Hyundai Elantra (the "Vehicle").

31.     The Vehicle was a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because Plaintiff bought and used the Vehicle for personal, family, or household purposes.

32.     In connection with purchasing the Vehicle, Plaintiff entered into a retail installment contract (the "Agreement").

33.     The Agreement was contemporaneously assigned to Ally.

34.     Under the terms of the Agreement: (a) Plaintiff obtained a loan from Ally to finance the purchase of the Vehicle; (b) Plaintiff granted Ally a security interest in the Vehicle to secure repayment of the loan Ally issued to Plaintiff; (c) Plaintiff was required to make 60 monthly installment payments in the amount of $227.05; (d) the principal amount of the obligation was $9,905.62; and (e) the credit service charge was $3,217.38.

35.     The Agreement was a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provided for a security interest to Ally.   Therefore, Ally was a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

36.     Because Plaintiff's obligations under the Agreement were incurred for personal, family, or household purposes: (a) Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA; (b) Plaintiff was a "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22); (c) the Agreement was a "consumer goods transaction" under Minn. Stat. § 336.9-102(a)(24); and (d) Plaintiff's obligation under the Agreement was a "debt" as defined by 15 U.S.C. § 1692a(5).

**CONTINUOUS ACCEPTANCE OF LATE PAYMENTS**

37.     As early as October 2015, Plaintiff began to repeatedly fall behind on her monthly payments under the Agreement.

38.     Throughout the course of the Agreement, Plaintiff made numerous, late,

6

partial, and/or irregular payments (collectively, "Late Payments") to Ally.

39.     Ally always accepted Plaintiff's Late Payments.

40.     Ally never rejected any Late Payments from Plaintiff.

41.     Ally never returned any Late Payments to Plaintiff.

42.     After accepting the Late Payments from Plaintiff, Ally failed to send Plaintiff: (a) a *Cobb* notice; (b) a notice mentioning or requiring strict compliance with the original terms of the Agreement; (c) a notice mentioning or warning that no additional Late Payments would be accepted in the future; (d) a notice mentioning repossession; or (e) a notice warning Plaintiff that the Vehicle may be repossessed.

43.     Plaintiff never received: (a) a *Cobb* notice; (b) a notice mentioning or requiring strict compliance with the original terms of the Agreement; (c) a notice mentioning or warning that no additional Late Payments would be accepted in the future; (d) a notice mentioning repossession; or (e) a notice warning Plaintiff that the Vehicle may be repossessed.

44.     Throughout the course of the Agreement, Ally sent Plaintiff regular late notices (collectively, "Late Notices").

45.     The Late Notices did not mention: (a) strict compliance with the Agreement; (b) repossession; (c) that additional Late Payments would no longer be accepted; nor (d) any other *Cobb* notice language.

46.     The Late Notices indicated that Ally would continue to accept additional Late Payments.

47.     Ally sent Late Notices to Plaintiff on November 30, 2015; March 1, 2016;

May 1, 2016; June 30, 2016; November 30, 2016; May 31, 2017; September 8, 2017; April 2, 2018; July 31, 2018; December 6, 2018; and March 3, 2019.

48.   The Late Notices had identical language.

49.   Plaintiff made Late Payments after each Late Notice.

50.   Ally always accepted Late Payments after sending a Late Notice to Plaintiff.

51.   On March 3, 2019, Ally sent Plaintiff a Late Notice stating that Plaintiff needed to pay by March 16, 2019.

52.   On March 19, 2019, Plaintiff made a Late Payment to Ally which Ally accepted.

53.   Throughout the Agreement, Ally allowed Plaintiff to fall behind on the monthly payments and remain behind without requiring strict compliance with the terms of the Agreement.

54.   Ally never insisted upon strict compliance with the payment due date.

55.   Ally was required to send Plaintiff a *Cobb* notice after the acceptance of every single Late Payment. *See Cobb*, 295 N.W.2d at 237; s*ee also Buzzell*, 802 F. Supp. 2d at 1022.

56.   Ally failed to send Plaintiff any *Cobb* notice, let alone a *Cobb* notice after its acceptance of each Late Payment from Plaintiff.

**DEFENDANTS' UNLAWFUL REPOSSESSION**

57.   At all relevant times, Plaintiff resided at The Grainwood apartment complex, a senior living facility in Prior Lake, Minnesota ("Grainwood").

58.   At Grainwood, Plaintiff had a personal parking space in a secured and locked

garage. The garage was only accessible with an electronic garage door opener or an electronic key fob, which Grainwood issued to Plaintiff and other residents. Inside the garage was a garage door opener to manually open door.

59.     Grainwood limited access to the garage solely to Plaintiff and other residents. Such access was granted as part of the monthly rent, including an additional payment of $60.00, which Plaintiff paid to Grainwood.

60.     The main entrance to Grainwood was locked and only accessible to authorized persons, including residents and Grainwood personnel, by use of an electronic key fob.

61.     On or around June 5, 2019, Plaintiff's Vehicle was located in her personal parking space inside Grainwood's garage, which was secured, locked, and could only be accessed using a key fob or an electronic garage door opener.

62.     On or around June 5, 2019, Ally hired, engaged, or sought the assistance of Resolvion to acquire Plaintiff's Vehicle through self-help repossession.

63.     Thereafter, Resolvion hired, engaged, and/or sought the assistance of 11th Hour to perform the actual self-help repossession on behalf Resolvion and/or Ally.

64.     On or around June 5, 2019, Ally, Resolvion, or 11th Hour informed the police that it would be repossessing Plaintiff's Vehicle and that Defendants were lawfully able to possess Plaintiff's Vehicle.

65.     On or around June 5, 2019, 11th Hour gained unauthorized access to the garage by breaking into the garage through trickery, deceit, misrepresentations, lies, and fraud. Alternatively, 11th Hour gained unauthorized access to the garage by breaking into

the garage through forcible entry.

66.     After breaking into the garage, one of 11th Hour's repossession agents opened the garage through the inside garage door opener in order to provide access for 11th Hour's tow truck.

67.     Defendants never had authorization to enter Grainwood's garage.

68.     Defendants never had authorization to bring a tow truck in the Grainwood garage.

69.     On or around June 5, 2019, 11th Hour repossessed Plaintiff's Vehicle at the request of Resolvion and/or Ally.

70.     11th Hour breached the peace during the repossession because 11th Hour unlawfully trespassed onto private, secured, and locked property.

71.     11th Hour breached the peace during the repossession because 11th Hour gained unauthorized access to the garage by breaking and entering into the garage through trickery, deceit, misrepresentations, lies, and fraud; or alternatively, by breaking into the garage through forcible entry.

72.     11th Hour's actions on June 5, 2019, as described above, were taken on behalf of Ally and/or Resolvion.

73.     On June 6, 2019, Plaintiff noticed the Vehicle was missing.  Plaintiff contacted the police, who informed Plaintiff that the Vehicle had been repossessed and referred Plaintiff to Resolvion.

74.     Between June 6, 2019 and June 7, 2019, Plaintiff contacted Defendants regarding the release of her Vehicle.  Plaintiff was bounced around between the three

10

Defendants.

75.     On June 7, 2019, Plaintiff informed Resolvion that the repossession of her Vehicle was wrongful and illegal, and she demanded that Resolvion release the Vehicle.

76.     Resolvion refused to release the Vehicle.

77.     On June 19, 2019, Plaintiff informed 11th Hour that the repossession of Plaintiff's Vehicle was wrongful and illegal, and demanded that 11th Hour release the Vehicle.

78.     11th Hour refused to release the Vehicle.

79.     On June 25, 2019, Plaintiff informed Ally that the repossession of Plaintiff's Vehicle was wrongful and illegal, and demanded that Ally release the Vehicle.

80.     Ally refused to release the Vehicle.

81.     In July 2019, Plaintiff again informed Ally that the repossession of Plaintiff's Vehicle was wrongful and illegal, and demanded that Ally release the Vehicle.

82.     Ally again refused to release the Vehicle.

83.     Plaintiff was shocked and surprised by Defendants' conduct because Ally had always accepted Late Payments from Plaintiff.

84.     Since the beginning of the Agreement almost every payment from Plaintiff to Ally had been a Late Payment.

85.     Ally accepted Late Payments from Plaintiff even though Plaintiff was multiple months past due.

86.     In June 2019, Ally knew that: (a) it had repeatedly accepted Late Payments from Plaintiff; (b) it had not sent Plaintiff a *Cobb* notice after accepting her Late Payments;

and (c) it was required to send Plaintiff a *Cobb* notice prior to repossessing the Vehicle.

87.    Ally knew that it was required to send Plaintiff a *Cobb* notice after the acceptance of every single Late Payment because it had been sued before for the same violation.  *See e.g.*, *Zeglin v. Ally Financial, Inc., et. al.*, No. 0:16-cv-02515 (DSD/SER) [ECF. 50] at ¶¶ 23-27, 42-43, 67-69 (D. Minn. May. 3, 2017); *Shell v. Ally Financial, Inc., et. al.*, No. 0:17-cv-00137 (SRN/DTS) [ECF. 1], ¶¶ 71-81, 100-110 (D. Minn. Jan. 16, 2017); *Ebrahem v. Ally Financial, Inc., et. al.*, No. 0:17-cv-04483 (DWF/FLN) [ECF. 14], ¶¶ 20-30, 73-74 (D. Minn. Jan. 5, 2018).

88.    Defendants illegally and wrongfully repossessed Plaintiff's Vehicle.

89.    Ally failed to return Plaintiff's Late Payments.

90.    Ally sold the Vehicle and retained the proceeds.

91.    At all times, Resolvion was acting as an agent for Ally, acting on Ally's behalf, and acting at Ally's request and instruction.

92.    Resolvion represented to Plaintiff and to third parties that it was acting on behalf of Ally.

93.    At all times, 11th Hour was acting as an agent for Ally and/or Resolvion, acting on behalf of Ally and/or Resolvion, and acting at the request and instruction of Ally and/or Resolvion.

94.    11th Hour represented to Plaintiff and to third parties that it was acting on behalf of Ally and Resolvion.

95.    Defendants knew or reasonably should have known that each of the Defendants had been sued in the past for wrongful repossession and violations of the

FDCPA.

96.     Defendants' actions were ratified and/or authorized because: (a) any Defendant could have released the Vehicle; (b) Defendants refused to release the Vehicle; (c) Defendants refused to return the Vehicle to Plaintiff without the payment of money; (d) Ally accepted Plaintiff's Late Payments, including the last Late Payment; (e) Ally accepted and retained the Vehicle from 11th Hour and Resolvion after repossession; (f) Resolvion accepted and retained the Vehicle from 11th Hour after repossession; (g) Ally and Resolvion worked together to auction and sell the Vehicle; (h) Ally sold the Vehicle and retained the profits; and (i) any Defendant could have prevented the repossession by performing even a cursory review of the data, as opposed to blankly relying on unreliable and inaccurate electronic data.

**DAMAGE, HARM, AND INJURIES**

97.     Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendants' unlawful and wrongful repossession.

98.     Since the repossession Ally has been reporting the repossession to credit reporting agencies, commonly referred to as "credit bureaus."

99.     According to Experian, vehicle repossession negatively affects a consumer's credit score.  *See Repossession* (December 24, 2016, 2:12 p.m.), http://www.experian.com/blogs/ask-experian/category/credit-advice/report-advice/report-details/repossession.

100.     Ally's report of the wrongful repossession on Plaintiff's credit report negatively impacted Plaintiff's credit score.  As a result of the credit report, Ally impeded

Plaintiff's ability to obtain lower-cost credit, to obtain other loans, to find a job, and to find housing.

101.   Defendants stole and converted Plaintiff's property.

102.   Defendants' conduct interfered with, interrupted, invaded, and deprived Plaintiff's use, possession, and enjoyment of her personal property, specifically the Vehicle.

103.   All of Plaintiff's above-referenced injuries—both tangible and intangible—are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit, and the United States District Court for the District of Minnesota.

## CLASS ACTION ALLEGATIONS

104.   Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated, and seeks to certify the following Classes:

a.   Repossession Class:

*All Minnesota consumers whose vehicles were repossessed by or on behalf of Ally, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by Ally, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

b.   Repossession Subclass - Resolvion:

*All members of the Repossession Class whose vehicles were repossessed by or on behalf of Resolvion, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by Ally, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

c.   Repossession Subclass – 11th Hour:

*All members of the Repossession Class whose vehicles were repossessed by or on behalf of 11th Hour, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by Ally, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

d.   FDCPA Subclass - Resolvion:

*All members of the Repossession Class whose vehicles were repossessed by or on behalf of Resolvion, within one (1) year of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by Ally, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

e.   FDCPA Subclass – 11th Hour:

*All members of the Repossession Class whose vehicles were repossessed by or on behalf of 11th Hour, within one (1) year of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by Ally, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

105.   The Repossession Class, Repossession Subclass (Resolvion), Repossession Subclass (11th Hour), FDCPA Subclass (Resolvion), and FDCPA Subclass (11th Hour) (collectively the "Classes" or "Class") shall be subject to the following exclusions, who are not members of the Classes, notwithstanding eligibility according to the above criteria: all (1) Counsel for Plaintiff and the Classes, (2) Counsel for Defendants, (3) the assigned Judge, Magistrate Judge, and their clerks and staff, (4) Minnesota consumers whose account balances with Ally were discharged in bankruptcy prior to the repossession.

106.   During the class time-periods alleged herein, Ally did not have a policy and procedure in place of sending proper legal notice(s) to Plaintiff and the putative Classes. Based upon established policy and practice, Ally regularly repossessed the vehicles belonging to Plaintiff and the Classes without sending proper legal notice.

107. As a result of Defendants' failure to comply with Minnesota law, Ally did not have a present right to possess the property belonging to Plaintiff and the Classes in violation of Minn. Stat. § 336.9-609.

108. During the class time-period alleged herein, Resolvion and 11th Hour, on behalf of Ally, regularly repossessed vehicles belonging to Plaintiff and the Classes.

109. During the class time-period alleged herein, Resolvion and 11th Hour did not have a policy and procedure in place to verify that, before it engaged in repossession activity, co-Defendant Ally had sent the proper legal notice(s) to the Plaintiff and the class members.

110. As a result of Defendants' failure to comply with Minnesota law, Resolvion and 11th Hour did not have a present right to possess the property belonging to Plaintiff and the class members in violation of 15 U.S.C. § 1692f(6).

111. This action has been brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because the Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b) for class certification.

**Rule 23(a)(1) - Numerosity**

112. Ally is "one of the largest full-service automotive finance operations in the country and offer a wide range of financial services and insurance products to automotive dealerships and consumers." *See About Us: Our Company*, https://www.ally.com/about/company-structure (Jan. 7, 2020, 8:03 p.m.). Over "8,000,000 people" use Ally for their bank, auto, other financial needs. *Id; see also About Us: Our*

*Company: Ally Auto*, https://www.ally.com/about/company-structure/ally-auto.html (Jan. 7, 2020, 8:10 p.m.) ("Ally is one of the largest providers of automotive financing in the U.S.").

113.   Ally provides financing to a large number of Minnesota consumers to purchase vehicles.  Of these Minnesota consumers, many have fallen behind on their monthly automobile loan payments, and make late, partial, or irregular payments to Ally. Ally repeatedly accepted such late, partial, and irregular payments, and Minnesota consumers never received a legally sufficient notice prior to the repossessions described herein.

114.   There are only a limited number of national repossession entities, and even fewer number of local repossession entities.  In addition, Ally only works with certain repossession vendors that must be authorized and approved by Ally.  Defendants are authorized and approved vendors for Ally.

115.   Ally entered into a contractual relationship with Resolvion wherein Resolvion, on behalf of Ally, was to locate and repossess vehicles belonging to Plaintiff and the class members.  In exchange, Ally was to pay Resolvion for the services it provided to Ally.  As part of its contract, Resolvion was allowed to "forward" the repossession order to a local repossession agent such as 11th Hour.

116.   11th Hour entered into a contractual relationship with Ally and/or Resolvion, wherein 11th Hour, on behalf of Ally and/or Resolvion, was to locate and repossess the vehicles belonging to Plaintiff and class members'.  In exchange, Ally and/or Resolvion was to pay 11th Hour for the services it provided to Ally and/or Resolvion.

117.   Upon information and belief, the contractual arrangements between Defendants are general service contracts pertaining to repossession activities on a continuous or on-going basis.  The contracts between Defendants pertain to a volume of repossessions and not any one individual class member.

118.   Pursuant to the on-going services contract, Defendants communicate with each other and assign individual repossession assignments electronically through software services such as the Recovery Database Network.  Defendants provide repossession assignments to each other on a large volume scale pursuant to such on-going services contracts.

119.   Resolvion boasts as to over 25,000 successful repossessions each month. Likewise, 11th Hour boasts that it leads the industry in recovery rates through cutting edge technology.

120.   The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of 100 consumers. Thus, it is plausible that Ally failed to send *Cobb* notices to such a large number of consumers that joinder of all in this lawsuit would be impracticable.  Likewise, it is plausible that Resolvion and 11th Hour repossessed such consumers' vehicles that joinder of all in this lawsuit would be impracticable

121.   The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including but not limited to the business records of Defendants and the online accounts from Defendants' website or internal software.

**Rule 23(a)(2) - Commonality**

122.    Common questions of law and fact that exist as to Classes.  These common legal and factual questions include:

   a.  Whether Ally repossessed the class members' vehicles without a present right to possess such vehicles;

   b.  Whether Ally repossessed the class members' vehicles without sending the requisite *Cobb* notice after repeatedly accepting Late Payments from the class members; and

   c.  Whether  Resolvion and 11th Hour used unfair or unconscionable means to enforce a security interest against the class members by taking or threatening to take certain nonjudicial action to effect dispossession of the class members' property, when Resolvion and 11th Hour had no present right to possession of the property which they claimed as collateral through an enforceable security interest.

123.    The common evidence that will drive resolution of the claims for the Classes is a list of Minnesota consumers: (a) who have made late, partial, and irregular payments to Ally over the course of their loan; (b) which were accepted by Ally; (c) who were never sent a legally sufficient *Cobb* notice from Ally after making the late payment; and (d) who subsequently experienced a repossession or attempted repossession of their vehicle.

**Rule 23(a)(3) - Typicality**

124.    Plaintiff's claims are typical of the claims of all the other members of the Classes because Plaintiff has the same claims to statutory relief and has suffered the same injuries as all other class members.  Likewise, Plaintiff's claims are based on the same legal theories as the claims of all the other members of the Classes.

125.    The claims of Plaintiff and the class members originate from the same conduct, practice, and procedure on the part of Defendants.  Thus, the claims of each class

member require proof of the same operative facts.  Any defenses that Defendants may have to liability or quantum of damages with respect to Plaintiff's claims would be generally applicable to all members of the Classes.

**Rule 23(a)(4) - Adequacy**

126.   Plaintiff brings this lawsuit after an extensive investigation of Defendants' alleged misconduct, with the intention to stop Defendants' unlawful practices, and to recover the same relief for all consumers affected.

127.   Because Plaintiff has no interest adverse to or in conflict with the interests of the members of the Classes, Plaintiff will fairly and adequately protect the interests of all class members.

128.   Plaintiff's counsel, Adam R. Strauss, practices exclusively in consumer protection with an emphasis on litigation concerning the FDCPA and wrongful repossession matters under the Minnesota UCC.  Plaintiff's counsel has been certified as class counsel in wrongful repossession class actions in the District of Minnesota, all of which sought to enforce Minnesota consumers' rights under *Cobb* and the Minnesota UCC.

129.   Neither Plaintiff nor her counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit.  Plaintiff and her counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the Classes.

**Rule 23(b) – Predominance/Superiority**

130.   A class action is appropriate because  questions of law and fact common to Plaintiff and the Classes substantially predominate over questions that may affect

individual class members.  Because all members of the Classes had their rights violated in the same manner by the same actions of Defendants, the answer to these common questions will advance the adjudication or resolution of the litigation as to all class members.

131.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because the costs to pursue individual claims would likely exceed what any one class member has at stake. Thus, members of the Classes have little interest in controlling separate actions when considering the cost, risk, delay, and uncertainty of recovery in prosecuting these claims.

132.    The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

133.    Statutory relief under the FDCPA and the Minnesota UCC follows from evidence that Defendants repossessed the vehicles after accepting late payments from class members as opposed to providing class members with a proper *Cobb* notice required under Minnesota law—not the subjective or individual experience of any class member.

134.    Whether Defendants violated the law can be determined by examination of Defendants' policies and conduct and a ministerial inspection of Defendants' business records.

135.    Upon information and belief, few members of the Classes are aware that Defendants' actions were unlawful. Thus, the class notice mechanism provides an opportunity for uninformed members of the Classes to learn about their rights and obtain

relief where they otherwise would not have.

136.   Plaintiff and her counsel are not aware of any other pending actions against Ally related to their regular practice of unlawful repossessions and/or attempted repossessions.

137.   A class action is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the parties engaged in the provision of enforcing security agreements.   Likewise, the prosecution of separate actions by individual class members would, as a practical matter, be dispositive of the interests of other members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
**(Defendants Resolvion and 11th Hour)**

138.   Plaintiff restates and re-alleges the preceding allegations of this Complaint.

139.   Plaintiff brings Count I as a Class Action on behalf of herself, the FDCPA Subclass (Resolvion), and the FDCPA Subclass (11th Hour) (collectively "FDCPA subclasses").

140.   Resolvion and 11th Hour used unfair or unconscionable means to enforce a security interest against Plaintiff and the FDCPA subclasses by taking or threatening to take certain nonjudicial action to effect dispossession of the property belonging to Plaintiff and the FDCPA subclasses when Resolvion and 11th Hour had no present right to possession of the property, which they claimed as collateral through an enforceable security

interest.

141.    Specifically, Resolvion and 11th Hour engaged in a self-help repossession of vehicles belonging to Plaintiff and the FDCPA Subclasses without the present legal right to possess and/or take the vehicles belonging to class members.

142.    Resolvion and 11th Hour did not have the legal right to possess the vehicles because Ally failed to send Plaintiff and the FDCPA Subclasses the proper *Cobb* notice after Ally had repeatedly accepted Late Payments from such class members.

143.    Resolvion's and 11th Hour's conduct violated 15 U.S.C. § 1692f(6).

144.    As a result of Resolvion's and 11th Hour's violations of the FDCPA, Plaintiff and the FDCPA Subclasses are entitled to actual damages, statutory damages up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(1)-(3).

## COUNT II
## VIOLATIONS OF MINN. STAT. § 336.9-609
## UNLAWFUL REPOSSESSION
**(All Defendants)**

145.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

146.    Plaintiff brings Count II as a Class Action on behalf of herself, the Repossession Class, the Repossession Subclass (Resolvion), and the Repossession Subclass (11th Hour).

147.    At all relevant times, Ally failed to send Plaintiff and Repossession classes the proper *Cobb* notice after Ally had repeatedly accepted late, partial, untimely, and irregular payments from Plaintiff and the Repossession classes. *See Cobb*, 295 N.W.2d at

236–7.

148.    As a result, Defendants had no present right to possess the vehicles belonging

to the Plaintiff and the Repossession classes, as that right has been defined and limited by

*Cobb*.  *See id.* at 237.

149.    Therefore, Defendants' self-help repossession of the vehicles belonging to

the Plaintiff and Repossession classes was conducted without compliance with Minnesota

law (*i.e., in violation of Minn. Stat. § 336.9-609*).  *See id*.

150.    As a result of Defendants' violations of Minn. Stat. § 336.9-609, and

pursuant to Minn. Stat. § 336.9-625, Plaintiff and the Repossession classes are entitled to

actual damages, and statutory damages in the amount of the credit service charge under the

agreement plus ten percent (10%) of the principal amount of the obligation under the loan

agreement.

## COUNT III
## CONVERSION
**(All Defendants)**

151.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

152.    Plaintiff brings Count III as a Class Action on behalf of herself, the

Repossession Class, the Repossession Subclass (Resolvion), and the Repossession

Subclass (11th Hour).

153.    At all relevant times, Plaintiff and the Repossession classes were entitled to

the exclusive use, possession, and enjoyment of their vehicles.

154.    At the time of repossession, Defendants did not have the present right to use,

take possession of, or move the property belonging to the Plaintiff and Repossession

classes—in this case, their vehicles.

155.   By unlawfully repossessing the vehicles belonging to the Plaintiff and the

Repossession classes, Defendants:

  a. Intentionally deprived, invaded, and interfered with the use, possession, and enjoyment of property belonging to Plaintiff and Repossession classes, without a claim of right;

  b. Took control and possession of vehicles belonging to the Plaintiff and Repossession classes without their consent;

  c. Deprived Plaintiff and the Repossession classes of the use of their vehicles; and

  d. Substantially intermeddled with property belonging to the Plaintiff and Repossession classes, without a claim of right.

156.   Defendants converted property belonging to Plaintiff and the Repossession

classes for their own use and benefit by unlawfully repossessing their vehicles.

157.   Defendants' conduct was done intentionally, unreasonably and without

justification.

158.   As a direct and proximate result of Defendants' conversion, Plaintiff

Repossession classes have been deprived of the use and possession of their vehicles and

damaged in an amount to be determined at trial.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

### COUNT IV
### VIOLATIONS OF MINN. STAT. § 336.9-609
### BREACH OF THE PEACE
### (All Defendants)

159.   Plaintiff restates and re-alleges the preceding allegations of this Complaint.

160.   11th Hour, acting in its capacity on behalf of Ally and/or Resolvion, breached

the peace in violation of Minn. Stat. § 336.9-609 by:

 a. gaining unauthorized access to Plaintiff's secured and locked garage;

 b. breaking and entering into the garage through trickery, deceit, misrepresentations, lies, and fraud; or alternatively, by breaking into the garage through forcible entry; and

 c. unlawfully trespassing onto secured and locked property.

161. Defendants' conduct violated Minn. Stat. § 336.9-609.  *See Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W. 2d 81, 86 (Minn. App. 1985) (breaking and entering debtor's property to repossess collateral constituted a breach of the peace); *Thompson v. First State Bank of Fertile*, 709 N.W. 2d 307, 311 (2006) (holding that entering a closed building or a closed gate to repossess collateral can be a breach of the peace).

162. The duty to conduct self-help repossessions without breaching the peace is a nondelegable obligation of creditors under Minnesota law.  Therefore, Ally is liable to Plaintiff to the full extent of the liability of Resolvion's and 11th Hour's breach of the peace.

163. As a result of Defendants' violations of Minn. Stat. § 336.9-609, and pursuant to Minn. Stat. § 336.9-625, Plaintiff is entitled to actual damages, and statutory damages in the amount of the credit service charge under the Agreement plus ten percent (10%) of the principal amount of the obligation under the loan Agreement.

164. As a direct and proximate result of Defendants' breach of the peace, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT V
## INVASION OF PRIVACY
### (All Defendants)

165.    Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

166.    Congress explicitly recognized a person's right to privacy in financial and collection matters in passing the FDCPA and the Gramm-Leach Bliley Act.  *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute . . . to invasions of individual privacy."); *see also* 15 U.S.C. § 6801(a).

167.    Defendants intentionally and/or negligently interfered with the solitude, seclusion, and/or private concerns or affairs of Plaintiff by: (a) breaking into Plaintiff's secured, and locked garage; (b) repossessing her Vehicle through breaching the peace, including gaining unauthorized access to Plaintiff's Vehicle; and (c) by informing third-parties that Plaintiff's vehicle could be lawfully repossessed as a result of non-payment.

168.    Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, private concerns, private affairs, and financial information.

169.    Defendants' above-described conduct resulted in multiple intrusions and invasions of Plaintiff's privacy.

170.    The intrusions and invasions of Plaintiff's privacy occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

171.    Defendants intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting any alleged debt or secured interest, thereby invading, and intruding upon Plaintiff's rights to privacy.

172.    As a result of Defendants' conduct, Defendants invaded Plaintiff's privacy

and right to financial privacy.

173.    As a direct and proximate result of Defendants' invasion of privacy, Plaintiff

has suffered damages in an amount to be determined at trial.

## JURY DEMAND

174.    Plaintiff is entitled to and hereby demands a trial by jury.  *See* U.S. Const.

amend. VII; Fed. R. Civ. P. 38.

**WHEREFORE**, Plaintiff Patricia Freeman demands a trial by jury and prays for

judgment against Defendants Ally Financial Inc. *d/b/a* Ally Financial, Resolvion, LLC,

and 11th Hour Recovery, Inc. as follows:

1.  Awarding judgment against Defendants in an amount to be determined at trial;

2.  Certifying the Repossession Class, Repossession Subclass (Resolvion), Repossession Subclass (11th Hour), FDCPA Subclass (Resolvion), and FDCPA Subclass (11th Hour) as described herein;

3.  Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)–(3) against Resolvion and 11th Hour;

4.  Awarding the FDCPA subclasses actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)–(3) against Resolvion and 11th Hour;

5.  Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

6.  Awarding the Repossession Class and the Repossession subclasses actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

7.  Awarding Plaintiff damages against Defendants caused by Defendants' conversion of Plaintiff's property;

8.  Awarding the Repossession Class and Repossession subclasses damages against Defendants caused by Defendants' conversion of such class members' property;

9. Awarding Plaintiff, the Repossession Class, Repossession Subclass (Resolvion), Repossession Subclass (11th Hour), FDCPA Subclass (Resolvion), and FDCPA Subclass (11th Hour) any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

10. Awarding Plaintiff, the Repossession Class, Repossession Subclass (Resolvion), Repossession Subclass (11th Hour), FDCPA Subclass (Resolvion), and FDCPA Subclass (11th Hour) such other and further relief as the Court deems proper, just and equitable.

**TARSHISH CODY, PLC**

Dated:  August 7, 2020        By:   *s/ Adam R. Strauss*
                                    Adam R. Strauss (#0390942)
                                    ars@attorneysinmn.com
                                    Benjamin W. Tarshish (#0392691)
                                    btarshish@attorneysinmn.com
                                    6337 Penn Avenue South
                                    Minneapolis, Minnesota 55423
                                    Telephone: (952) 361-5556
                                    Facsimile: (952) 361-5559
                                    **ATTORNEYS FOR PLAINTIFF**