UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Patricia Freeman, | Case No. 20-cv-1241 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| Ally Financial Inc. et al., | |
| Defendants. | |

---

In this dispute arising from the repossession of a vehicle, Defendants move to dismiss Plaintiff's amended complaint for failure to state a claim on which relief can be granted. (Dkts. 35, 41.) For the reasons addressed below, Defendants' motions are granted in part and denied in part.

## BACKGROUND

Plaintiff Patricia Freeman is a resident of Minnesota who purchased a 2013 Hyundai Elantra (the Vehicle) in June 2015 for personal, family, or household purposes. When she purchased the Vehicle, Freeman entered into a retail installment contract (the Agreement) that the dealership immediately assigned to Defendant Ally Financial Inc. (Ally). Under the terms of the Agreement, Freeman obtained a loan from Ally to finance the purchase of the Vehicle, granted Ally a security interest in the Vehicle to secure repayment of the loan, and agreed to make 60 monthly installment payments of $227.05. The Agreement also provides that "[a]cceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments" and that

"[i]f you pay late, we may also take the steps described below," which include repossession of the Vehicle.

Freeman began to fall behind on her monthly payments under the Agreement as early as October 2015. Almost all of Freeman's payments to Ally were late, partial, or irregular payments, which Ally repeatedly accepted. Ally sent Freeman late notices on eleven occasions between November 2015 and March 2019. The March 3, 2019 late notice states that "[i]f you pay and are late again in making your payments, we may exercise our rights without sending you another notice like this one even though we may have accepted late payments from you in the past."

On or about June 5, 2019, Ally hired Defendant Resolvion, LLC (Resolvion), to acquire Freeman's Vehicle through self-help repossession. In turn, Resolvion hired Defendant 11th Hour Recovery, Inc. (11th Hour), to perform the actual self-help repossession of Freeman's Vehicle on behalf of Resolvion and Ally. Thereafter, 11th Hour accessed the locked parking garage at the apartment complex where Freeman resided and repossessed Freeman's Vehicle. Freeman subsequently contacted Defendants, who each refused to release the Vehicle to her. Ally sold the Vehicle and retained the proceeds of the sale.

Freeman commenced this putative class-action lawsuit against Defendants in May 2020 and filed an amended complaint in August 2020. Count I alleges that Resolvion and 11th Hour violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6), by repossessing Freeman's Vehicle without the legal right to do so. Count II alleges that

Defendants' repossession of Freeman's Vehicle did not comply with notice requirements under Minnesota law, in violation of Minn. Stat. § 336.9-609. Count III alleges conversion based on Defendants' repossession of Freeman's Vehicle. Count IV alleges that Defendants' actions were a breach of the peace, in violation of Minn. Stat. § 336.9-609. And Count V alleges that Defendants' actions invaded Freeman's privacy. Defendants move to dismiss the amended complaint in its entirety.

## ANALYSIS

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions couched as factual allegations may be disregarded. *See id.* On a motion to dismiss, a district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics,*

*Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The Court addresses each count of Freeman's amended complaint in turn.

### I. Fair Debt Collection Practices Act Claim (Count I)

Count I of the amended complaint alleges that Resolvion and 11th Hour violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(6), by repossessing Freeman's Vehicle without the legal right to do so.  Defendants argue that Freeman fails to state an FDCPA claim because Defendants had a legal right to repossess the Vehicle.  Freeman contends that Defendants lacked such a legal right because they did not provide her with the requisite notice.

The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  As relevant here, the FDCPA prohibits repossession if "there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6).  Whether a repossession agent has a present right to possess property claimed as collateral depends on state law.  *See Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

Minnesota's Uniform Commercial Code governs a creditor's repossession of collateral.  *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980).  After a default, a secured party may repossess collateral "without judicial process, if [the secured party] proceeds without breach of the peace."  Minn. Stat. § 336.9-609(b)(2).  However, the Minnesota Supreme Court held in *Cobb* that, when a creditor

has a contractual right to repossess collateral but repeatedly has accepted late payments, the creditor must "notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral." 295 N.W.2d at 237. Defendants argue that a *Cobb* liability theory is no longer recognized under Minnesota law and that, even if it were, Freeman fails to allege that Ally's conduct induced Freeman's justifiable reliance on the belief that late payments were acceptable. The Court addresses each argument in turn.

      A.      ***Cobb* Liability**

Defendants contend that the *Cobb* notice requirement has been abrogated by subsequent developments in Minnesota law and, therefore, Freeman's *Cobb* liability theory fails as a matter of law. In particular, Defendants rely on Minnesota courts' interpretation of Minnesota's Credit Agreement Statute, Minn. Stat. § 513.33.

Under Minnesota's Credit Agreement Statute, a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." *Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 795 (8th Cir. 2014) (quoting Minn. Stat. § 513.33, subdiv. 2). The Credit Agreement Statute defines a "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subdiv. 1(1). An informal arrangement between a creditor and a debtor, in which the creditor will excuse a debtor's obligation to make timely payments on a loan, is

5

both "an agreement to 'forbear the repayment of money'" and a "financial accommodation" within the meaning of the Credit Agreement Statute. *Figgins v. Wilcox*, 879 N.W.2d 653, 658 (Minn. 2016) (quoting Minn. Stat. § 513.33, subdiv. 1(1)). Therefore, any such arrangement must be in writing to be enforceable. *Id.* at 659. A promissory-estoppel theory is not an exception to the Credit Agreement Statute, because allowing claims for promissory estoppel against a creditor would "substantially undermine" the statutory purpose of "prevent[ing] litigation based on oral promises allegedly made by bankers to their customers." *Id.* (citing *Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705 (Minn. 1992)).

Relying on the Credit Agreement Statute and *Figgins*, Defendants argue that Freeman's *Cobb* liability theory fails as a matter of law because Ally's repeated acceptance of late payments from Freeman amounts to an unenforceable unwritten credit agreement. Freeman counters that the amended complaint does not allege the existence of a credit agreement because the amended complaint does not allege an "agreement, oral promise, reliance on any promise or agreement, or contract modification."

The Court must determine whether Freeman's FDCPA claim is an "action on a credit agreement" that is governed by the Credit Agreement Statute. Minn. Stat. § 513.33. In *Figgins*, the Minnesota Supreme Court broadly construed the term "credit agreement" in the Credit Agreement Statute. 879 N.W.2d at 657–58. In doing so, the *Figgins* court held that a "credit agreement" includes any arrangement between a creditor and debtor that pertains to a financial accommodation or forbearance on the repayment of

6

money, including informal unwritten agreements. *Id.* This broad definition of "credit agreement" encompasses Freeman's allegations that Ally repeatedly accepted Freeman's late, partial, or irregular payments. The fact that Freeman does not expressly allege the existence of an agreement, promise, or contract modification is immaterial in light of the *Figgins* court's broad definition of "credit agreement," which encompasses the facts alleged in Freeman's amended complaint. As in *Figgins*, in this case the "actions of the parties and the facts as laid out in [the plaintiff's] complaint clearly show that the parties had reached an arrangement regarding a course of action" with respect to Freeman's late payments. *Id.* at 658. Therefore, the informal arrangement between Ally and Freeman pertaining to the acceptance of late payments is a "credit agreement" governed by the Credit Agreement Statute.

Under the Credit Agreement Statute, a debtor such as Freeman "may not maintain an action on a credit agreement unless the agreement is in writing" and satisfies several other statutory requirements. Minn. Stat. § 513.33, subdiv. 2. Significantly, both the Eighth Circuit and the Minnesota Court of Appeals have recognized that "[a]ny party asserting the existence of a credit agreement must comply with the writing and signature requirements of section 513.33, *regardless of the type of claim the agreement is alleged to support*." *Bracewell*, 748 F.3d at 796 (concluding that Credit Agreement Statute barred debtor's negligent-misrepresentation claim based on creditor's oral representation that it would postpone foreclosure sale) (quoting *BankCherokee v. Insignia Dev., LLC*, 779 N.W.2d 896, 903 (Minn. Ct. App. 2010) (concluding that Credit Agreement Statute

7

barred debtor's affirmative defenses to creditor's breach-of-contract claims because those defenses were contingent on the alleged existence of creditor's unwritten agreement to "forbear repayment" or make a "financial accommodation")). It is immaterial that Freeman is not seeking to *enforce* the informal unwritten arrangement between herself and Ally regarding late payments. Under Minnesota law, Freeman "may not maintain" *any* action that "assert[s] the existence of" an unwritten credit agreement. *Id.* (internal quotation marks omitted).

Freeman's FDCPA claim relies on her assertion that Ally failed to send her a *Cobb* notice. The duty to provide a *Cobb* notice arises when a creditor's "conduct ha[s] induced the justified reliance of the debtor in believing that late payments were acceptable." *Cobb*, 295 N.W.2d at 236. Thus, necessary to Freeman's FDCPA claim is her implicit assertion that an unwritten credit agreement existed between Freeman and Ally whereby Ally agreed to excuse Freeman's obligation to make timely payments. But under Minnesota law, regardless of the *type* of claim, Freeman may not maintain an action in which she asserts the existence of an unwritten credit agreement and her claim is "contingent on proof" of such an agreement. *BankCherokee*, 779 N.W.2d at 902–03; *accord Bracewell*, 748 F.3d at 795–96. Because Freeman's FDCPA claim is contingent on proof of an unwritten agreement between Freeman and Ally to forbear or make a financial accommodation as to Freeman's repayment obligations, Freeman's FDCPA claim is barred by the Credit Agreement Statute.

The Court is mindful that this conclusion necessarily means that Minnesota's

*Cobb* notice requirement effectively has been abrogated, or at least narrowed, in circumstances such as those presented by this case. Significantly, Minnesota courts recognize that common law rules may be abrogated, in full or in part, by necessary implication when there is a conflicting statute. *See, e.g.*, *Urban v. Am. Legion Dep't of Minn.*, 723 N.W.2d 1, 5 (Minn. 2006) (recognizing that, although "Minn. Stat. § 340A.801 does not expressly prohibit the application of respondeat superior common law," Minn. Stat. § 340A.501 "necessarily implies that the legislature did not expect respondeat superior to apply to CDA liability"); *First Class Valet Servs., LLC v. Gleason*, 892 N.W.2d 848, 851 (Minn. Ct. App. 2017) ("It is true that [Minn. Stat. §] 181.970 does not explicitly abrogate [the] common law rule. However, we read [Minn. Stat. §] 181.970 to abrogate the rule by necessary implication.").

Although it does not appear that any Minnesota court has reached this conclusion with respect to the Credit Agreement Statute and the *Cobb* notice requirement, it also does not appear that this issue has been *presented* to a Minnesota court. Indeed, the parties have not identified—and the Court's research has not found—a single Minnesota Supreme Court or published Minnesota Court of Appeals decision in which both Minnesota's Credit Agreement Statute and the *Cobb* notice requirement are addressed. Moreover, the one *unpublished* Minnesota Court of Appeals decision that addresses both the Credit Agreement Statute and the *Cobb* notice requirement is not persuasive here for at least three reasons: (1) it is not precedential, (2) it predates the Minnesota Supreme Court's *Figgins* decision, and (3) it does not address whether a conflict exists between

9

*Cobb* and the Credit Agreement Statute.  *See Hinden v. Am. Bank of N.*, No. A09-404, 2009 WL 4573909 (Minn. Ct. App. Dec. 8, 2009).  Therefore, the Court concludes that the *Cobb* notice requirement has been abrogated by necessary implication as applied to the circumstances presented in this case.[1]

### B. Justifiable Reliance

Defendants also argue that, even if the *Cobb* notice requirement has not been abrogated, Freeman fails to state an FDCPA claim because the amended complaint fails to allege facts establishing that Freeman justifiably relied on Ally's repeated acceptance of late payments.

In *Cobb*, the Minnesota Supreme Court held that "the repeated acceptance of late payments by a creditor who has the contractual right to repossess the property imposes a duty on the creditor to notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral."  295 N.W.2d at 237. "The basis for imposing this duty on the secured party is that the secured party is

---

[1] In seeking to avoid this result, Freeman relies heavily on this Court's decision in *Hendrickson v. Fifth Third Bank*, No. 18-cv-0086 (WMW/TNL), 2019 WL 652417 (D. Minn. Feb. 15, 2019).  In that case, on facts materially similar to those presented here, this Court denied defendants' motion to dismiss, concluding that there was "no basis to conclude that a claim arising out of a creditor's failure to send a *Cobb* notice is an 'action *on* a credit agreement.' " *Hendrickson*, 2019 WL 652417, at *3 (quoting Minn. Stat. § 513.33, subdiv. 2).  But the *Hendrickson* decision is not binding authority. Moreover, the parties in *Hendrickson* did not identify the relevant Minnesota case law holding that any party asserting the existence of a credit agreement must comply with the writing and signature requirements of the Credit Agreement Statute, no matter what type of claim that party alleges.  *See Bracewell*, 748 F.3d at 796; *BankCherokee*, 779 N.W.2d at 903.  For these reasons, the *Hendrickson* decision has no bearing on the Court's decision in this case.

estopped from asserting his contract rights because his conduct had *induced the justified reliance of the debtor* in believing that late payments were acceptable." *Id.* at 236 (emphasis added). If justifiable reliance is lacking, the *Cobb* notice requirement does not apply. *See Rodgers v. Gen. Elec. Cap. Corp.*, 596 N.W.2d 671, 673–74 (Minn. Ct. App. 1999) (holding that "the notice requirements of *Cobb* do not apply in this case" because plaintiff "has not shown any justifiable reliance that would estop [defendant] from asserting its security interest in the vehicle").

Defendants contend that Freeman has not plausibly alleged that she justifiably relied on Ally's repeated acceptance of late, partial, or irregular payments. The parties' Agreement expressly provides that Ally's "[a]cceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments." The late notice Ally sent to Freeman also warned that if "you pay and are late again in making your payments, we may exercise our rights without sending you another notice like this one even though we may have accepted late payments from you in the past." In light of these express warnings, Defendants argue, Freeman cannot establish that she *justifiably* relied on Ally's repeated acceptance of late payments. As a result, even assuming that the *Cobb* notice requirement has not been abrogated, Ally contends that it had no obligation to provide Freeman a *Cobb* notice.

Freeman counters that a creditor's repeated acceptance of late payments is sufficient to establish justifiable reliance, regardless of any other surrounding circumstances. But Freeman cites no legal authority that plausibly supports this

11

argument. It is true that in *Cobb* the court concluded that the creditor's repeated acceptance of late payments was sufficient evidence to establish the debtor's justifiable reliance. 295 N.W.2d at 236–37. But unlike the circumstances here, there was no evidence presented in *Cobb* that the creditor had expressly, unequivocally, and repeatedly warned the debtor *not* to rely on any past acceptance of late payments as an indication that the creditor would continue to accept late payments. The *Cobb* decision does not establish that a creditor's repeated acceptance of late payments categorically constitutes justifiable reliance in every circumstance. Indeed, courts applying *Cobb* have found a lack of justifiable reliance based on surrounding circumstances despite a creditor's past acceptance of late payments. *E.g.*, *Rodgers*, 596 N.W.2d at 673; *Swift Cnty. Bank v. United Farmers Elevators*, 366 N.W.2d 606, 608–09 (Minn. Ct. App. 1985). In other analogous contexts, courts also have found that justifiable reliance may be negated by express warnings against reliance. *See, e.g.*, *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 481 (8th Cir. 2018) (applying Minnesota law and concluding that plaintiffs "cannot show justifiable reliance on [defendant's] replacement cost estimates" when the contract at issue "expressly states that [defendant] does not guarantee its replacement cost estimate"); *Dakota Bank v. Eiesland*, 645 N.W.2d 177, 182 (Minn. Ct. App. 2002) (affirming dismissal of misrepresentation claim for lack of justifiable reliance because disclaimer was "specific and warned the bank of the very problem of which [plaintiff] complains"). In light of the totality of the circumstances described in Freeman's amended complaint, the fact that Ally repeatedly accepted late payments is insufficient,

Under Minnesota law, after a debtor defaults, a secured party may repossess collateral "without judicial process, if [the secured party] proceeds without breach of the peace." Minn. Stat. § 336.9-609(b)(2). And "a secured party's authority to take possession of collateral after default carries with it the privilege to enter another's land for the purpose of taking possession of the collateral if the entry is reasonably necessary in order to take possession." *Thompson v. First State Bank of Fertile*, 709 N.W.2d 307, 312 (Minn. Ct. App. 2006). Five factors are relevant when determining whether a repossessor's conduct was reasonable: "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception." *Clarin v. Minn. Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999) (internal quotation marks omitted).

In the amended complaint, Freeman alleges that Defendants gained unauthorized access to the secured and locked residential parking garage where the Vehicle was parked by breaking and entering into the garage through either forcible entry or trickery, deceit, misrepresentations, lies, and fraud. More specifically, Freeman alleges that the parking garage is accessible only by residents of the building using an electronic garage door opener or key, and that Freeman paid—as part of her monthly rent—an additional charge for use of a secure personal parking space. And, Freeman alleges, "Defendants never had authorization to enter [the] garage" and "Defendants never had authorization to bring a tow truck in the . . . garage." Significantly, the five relevant factors used to determine whether a repossessor's conduct was reasonable are fact-intensive, and a plaintiff is not

14

required to prove her claims or offer evidence at the pleading stage. *See Twombly*, 550 U.S. at 555 (stating that a complaint "does not need detailed factual allegations" to survive a motion to dismiss); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (observing that "specific facts are not necessary" and a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks and alterations omitted)). Freeman's allegations, if proven to be true, could plausibly establish that the location where the repossession took place and the type of premises involved (a personal parking space in a locked, secured residential parking garage with limited access), together with the alleged use of deceit or force to gain entry, rendered Defendants' conduct unreasonable. As such, Freeman has plausibly alleged a breach-of-the-peace claim.

Defendants' arguments to the contrary are unavailing. Notably, all of the cases on which Defendants rely involved summary judgment. *See Clarin*, 198 F.3d at 664; *Moore v. Cap. One N.A.*, No. 14-4745 (DSD/SER), 2016 WL 1627604 (D. Minn. Apr. 22, 2016); *Allen v. Fid. Fin. Servs.*, No. 98-1725 ADM/AJB, 1999 WL 33911359 (D. Minn. Dec. 16, 1999); *Revering v. Norwest Bank Minn., N.A.*, 99-480/RHK/JMM, 1999 WL 33911360 (D. Minn. Nov. 30, 1999); *Thompson*, 709 N.W.2d at 312. These cases are inapposite because their analyses apply the *proof* standard rather than the *pleading* standard. Freeman is not required to prove her breach-of-the-peace claim at the pleading stage before discovery has occurred. *See Twombly*, 550 U.S. at 556 (providing that a plaintiff may rely on a "reasonable expectation that discovery will reveal evidence" of the alleged

15

conduct). Moreover, although Defendants argue that "no one saw the repossession take place" and "no altercation occurred at the time of the repossession," no such facts are pleaded in the amended complaint. Therefore, Defendants' arguments are unavailing.

Accordingly, Defendants' motions to dismiss Freeman's breach-of-the-peace claim (Count IV) are denied.

### IV. Invasion-of-Privacy Claim (Count V)

Count V of the amended complaint alleges that Defendants' actions invaded Freeman's privacy. Defendants argue that Freeman fails to state an invasion-of-privacy claim because she lacked a legitimate expectation of privacy in either the parking garage or the Vehicle. Defendants also contend that the alleged disclosures to credit reporting agencies cannot form the basis for an invasion-of-privacy claim because such a claim is preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681h(e), 1681t(b)(1)(F).

Minnesota recognizes tort claims for invasion of privacy, including intrusion upon seclusion. *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998). "Intrusion upon seclusion occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another of his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Id.* at 233 (internal quotation marks omitted). A claim for intrusion upon seclusion "has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App.

2001). "Minnesota courts have indicated that plaintiffs must meet a high threshold of offensiveness and expectation of privacy to have a viable claim for intrusion upon seclusion." *Rasmusson v. Chisago County*, 991 F. Supp. 2d 1065, 1078 (D. Minn. 2014) (collecting cases).

When evaluating an invasion-of-privacy claim, a court gives special consideration to "the circumstances under which the alleged intrusion occurred, and the expectations that a reasonable person would have under such circumstances." *Bauer v. Ford Motor Credit Co.*, 149 F. Supp. 2d 1106, 1111 (D. Minn. 2001). Whether the alleged conduct meets the reasonable-person standard ordinarily is a question of fact, but it becomes a question of law "if reasonable persons can draw only one conclusion from the evidence." *Swarthout*, 632 N.W.2d at 745 (internal quotation marks omitted).

The amended complaint alleges that Defendants invaded Freeman's privacy in part "by informing third-parties that Plaintiff's vehicle could be lawfully repossessed as a result of non-payment." Defendants contend that Freeman cannot state a claim for invasion of privacy based on Defendants' alleged disclosures to credit reporting agencies. Under the FCRA, a consumer may not bring an invasion-of-privacy claim "with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). The FCRA also prohibits state laws from imposing any requirements or prohibitions "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C.

17

§ 1681t(b)(1)(F); *see also Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011) ("Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; [Section] 1681t(b)(1)(F) preempts more of these claims."). As Freeman provides no legal authority or argument as to how her invasion-of-privacy claim premised on disclosures to credit reporting agencies are actionable in light of the preemption provisions of the FCRA, her allegations pertaining to disclosures made to credit reporting agencies are insufficient to state a plausible invasion-of-privacy claim.

The amended complaint also alleges, however, that Defendants invaded Freeman's privacy by "breaking into Plaintiff's secured, and locked garage [and] repossessing her Vehicle through breaching the peace, including gaining unauthorized access to Plaintiff's Vehicle." As addressed above, Freeman alleges that the Vehicle was in a locked, secured residential parking garage with limited access, and that Defendants gained access to this secure space through forcible entry or deceit. Freeman also alleges that the manner in which Defendants repossessed the Vehicle was unlawful because Defendants breached the peace in violation of Minn. Stat. § 336.9-609(b)(2). Whether the repossession of a vehicle under these circumstances is an intrusion that would be highly offensive to a reasonable person presents questions of fact for a jury that cannot be determined at this early stage of the proceedings.

Defendants contend that Freeman had no legitimate expectation of privacy in the parking garage as a matter of law. But Defendants provide no applicable legal authority to support this argument. Instead, Defendants rely on an unpublished, nonprecedential

Minnesota Court of Appeals decision that involves a Fourth Amendment analysis, not an invasion-of-privacy analysis. *See Cornelius v. State*, No. A03-704, 2004 WL 237768, at *2–3 (Minn. Ct. App. Feb. 10, 2004). Defendants also rely on an Eighth Circuit decision that predates Minnesota's adoption of the invasion-of-privacy tort by more than twenty years and similarly involves a Fourth Amendment analysis. *See United States v. Eisler*, 567 F.2d 814, 816 (8th Cir. 1977). Defendants' reliance on these inapposite cases is unavailing.

For these reasons, Defendants' motions to dismiss Freeman's invasion-of-privacy claim (Count V) are denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motions to dismiss, (Dkts. 35, 41), are **GRANTED IN PART** as to Plaintiff's Fair Debt Collection Practices Act (FDCPA) claim (Count I), wrongful-repossession claim (Count II), and conversion claim (Count III), and these claims are **DISMISSED WITH PREJUDICE**.

2. Defendants' motions to dismiss, (Dkts. 35, 41), are **DENIED IN PART** as to Plaintiff's breach-of-the-peace claim (Count IV) and invasion-of-privacy claim (Count V).

Dated: March 23, 2021

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge

19